IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Kelvin Jackson, Sr., #356452, )<br>)<br>    Petitioner, )<br>)<br>v. )<br>)<br>Warden of Lee Correctional Institution, )<br>)<br>    Respondent. )<br>_____) | Civil Action No. 2:21-cv-108-BHH<br><br>**<u>ORDER</u>** |

  This matter is before the Court upon Petitioner Kelvin Jackson, Sr.'s ("Petitioner" or "Jackson") petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.), the matter was referred to a United States Magistrate Judge for initial review.

  On January 6, 2022, Magistrate Judge Mary Gordon Baker filed a Report and Recommendation ("Report"), outlining the issues and recommending that the Court grant Respondent's motion for summary judgment and deny Petitioner's cross-motion for summary judgment. Petitioner filed objections to the Report, and Respondent filed a reply to Petitioner's objections. For the reasons set forth herein, the Court adopts the Magistrate Judge's recommendation, grants Respondent's motion for summary judgment, and denies Petitioner's cross-motion for summary judgment.

**<u>BACKGROUND</u>**

  The Magistrate Judge's Report sets forth the relevant factual and procedural background in detail, and no party has specifically objected to these portions of the Report. Accordingly, the Court incorporates the background and procedural history sections of the

Report and repeats only what is necessary for purposes of this order.

A Beaufort County grand jury indicted Petitioner for murder in July of 2011, and Petitioner proceeded to a jury trial in July of 2013. During Petitioner's trial, the state presented evidence regarding Petitioner's prior relationship with the victim and his whereabouts the night of the murder, along with additional evidence tying Petitioner to the crime. On August 2, 2013, the jury convicted Petitioner of murder, and he was sentenced to 45 years' imprisonment.

Petitioner filed a direct appeal of his conviction and sentence, and he was represented by counsel on appeal, who filed a brief raising the following issue: "Whether the writings seized from appellant's jail cell that were reviewed *ex parte* and *in camera* by a magistrate judge were admitted in violation of appellant's due process rights and were protected by the attorney-client privilege?" (ECF No. 15-5 at 5.) The South Carolina Court of Appeals affirmed Jackson's conviction and sentence in an unpublished per curiam opinion filed on November 12, 2015. (ECF No. 15-7.) The remittitur was issued on May 6, 2016. (ECF No. 15-8.)

On February 12, 2016, Petitioner filed an application for post-conviction relief ("PCR"), alleging misconduct by both the prosecutor and law enforcement, ineffective assistance of trial counsel, and erroneous evidentiary rulings by the trial court. (ECF No. 15-12 at 99-104.) Petitioner amended his claims on August 30, 2016. (*Id.* at 117-31.)

The PCR court held an evidentiary hearing in January of 2018, where Petitioner and trial counsel testified. In an order dated September 14, 2017, and filed on September 22, 2017, the PCR court rejected Petitioner's claims and denied the PCR application.

Jackson appealed the PCR court's denial of his petition, and counsel for Petitioner

raised the following issues in the petition for writ of certiorari:

1. Whether the PCR court erred in finding Petitioner presented no evidence that trial counsel placed Petitioner's character at issue where trial counsel testified he admitted evidence Petitioner had charges of failure to pay child support and forgery, and these were irrelevant prior bad acts, and Petitioner correctly testified trial counsel put his character at issue by calling him a womanizer and allowing the jury to hear of his prior arrests, and where the solicitor exploited counsel's errors?

2. Whether the PCR court erred in using "overwhelming evidence of guilt" as a categorical bar to post-conviction relief where the state failed to present conclusive proof of guilt?

(ECF No. 15-13 at 3.)  The South Carolina Supreme Court transferred the case to the court of appeals, which denied certiorari on September 25, 2020.  (ECF No. 15-16.)

Petitioner filed the instant § 2254 petition in January of 2021.  In June of 2021, counsel appeared on behalf of Petitioner and filed a motion to amend the § 2254 petition.  The Court granted the motion and permitted Petitioner to file an amended petition, which asserts the following ground for relief: "The State's examination and admission of Petitioner's letters to counsel violated Petitioner's Sixth Amendment right to counsel." (ECF No. 30 at 1.)  Respondent filed a return to the amended petition along with a motion for summary judgment, and Petitioner filed a response in opposition to Respondent's motion for summary judgment along with a cross-motion for summary judgment.

As mentioned above, the Magistrate Judge issued a Report analyzing the parties' motions and recommending that the Court grant Respondent's motion for summary judgment and deny Petitioner's cross-motion for summary judgment.  Stated plainly, the Magistrate Judge found that Petitioner's sole ground for relief is procedurally defaulted and that Petitioner failed to demonstrate cause or prejudice for the default, or actual innocence.

Petitioner filed objections to the Report, (1) asserting that the Magistrate Judge improperly conflated the procedural concepts of exhaustion and procedural default and (2) requesting a certificate of appealability if the Court adopts the Magistrate Judge's findings. Respondent filed a response to Petitioner's objections, asserting that the Magistrate Judge properly found Petitioner's claim to be procedurally defaulted and properly recommended the denial of a certificate of appealability.

## STANDARDS OF REVIEW

### I.    The Magistrate Judge's Report

The Magistrate Judge makes only a recommendation to the Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a de novo determination of any portion of the Report to which a specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b).

### II.    Summary Judgment

To grant a motion for summary judgment, this Court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The Court is not to weigh the evidence, but rather to determine if there is a genuine issue of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on

which the party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *See Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).

## DISCUSSION

**I.     Habeas Corpus Relief**

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In *Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court explained that § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. *Id.* at 404-05. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in controlling cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Id.* at 405-06. A federal habeas court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from Supreme Court decisions but unreasonably applies it to the

5

facts of the particular case. *Id.* at 407-08. Factual determinations made by the state "shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## II.     Exhaustion and Procedural Bar

Before a Petitioner can obtain relief under § 2254, he must first clear a series of procedural hurdles. For example, a state prisoner must exhaust his state court remedies by "present[ing] his claim to the state's highest court" before a federal court can grant relief on the merits of a claim.[1] *Mahdi v. Stirling*, 20 F.4th 846, 892 (4th Cir. 2021); *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). Thus, "[t]he exhaustion doctrine bars a claim if it is raised for the first time in a federal habeas petition." *Mickens v. Taylor*, 240 F.3d 348, 356 (4th Cir. 2001) (en banc); *see also Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998).

In other words, to exhaust a federal habeas corpus claim, a petitioner must "fairly present[ ] to the state court both the operative facts and the controlling legal principles associated *with each claim*." *Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004) (citation and internal quotation marks omitted) (emphasis added). This means that a petition must present the claim to the state court "face-up and squarely." *Id.* Otherwise, the state will be deprived of its "opportunity to correct the constitutional violation in the first

---

[1] The exhaustion requirement exists to promote comity within our federal system. As the Supreme Court has explained:

> Because "it would be unseemly in our dual system of government for a federal district court to upstate a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant on the litigation, have had an opportunity to pass upon the matter."

*Rose v. Lundy*, 455 U.S. 509, 518 (1982) (quoting *Darr v. Burford*, 399 U.S. 200, 204 (1950)).

instance." *Id.* (internal quotation marks omitted).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default–often referred to as a procedural bar–one example of which occurs 'when a habeas petitioner fails to exhaust available state remedies and the court to which [he] would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Mahdi*, 20 F.4th at 892 (quoting *Breard*, 134 F.3d at 619) (internal quotation marks omitted). Another way procedural default occurs is when "a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for dismissal." *Breard*, 134 F.3d at 619.

Nevertheless, because the requirement of exhaustion is not jurisdictional, in very limited circumstances a federal court may consider claims that have not been presented to the highest South Carolina court with jurisdiction. *Granberry v. Greer,* 481 U.S. 129, 131 (1989). Specifically, a federal court may review a procedurally defaulted claim if the petitioner can demonstrate sufficient cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim would result in a miscarriage of justice because the petitioner is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986). "Cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." *Strickler v. Greene*, 527 U.S. 263, 283 n. 24 (1999) (quoting *Murray*, 477 U.S. at 488). A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Murray*, 477 U.S.

7

at 495-96.  Absent a showing of cause, the court is not required to consider actual prejudice.  *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995).  However, if a petitioner demonstrates sufficient cause, he also must show actual prejudice in order to excuse a default.  *Murray*, 477 U.S. at 492.  To show actual prejudice, the petitioner must demonstrate more than plain error.  A petitioner must show an actual and substantive disadvantage as a result of the error, not merely the possibility of harm.

As an alternative to demonstrating cause for failure to raise a claim, a petitioner may show a miscarriage of justice.  To demonstrate a miscarriage of justice, the petitioner must show that he is actually innocent.  *See Murray*, 477 U.S. at 496 (holding that a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of someone who is actually innocent").  Actual innocence is defined as factual innocence, not legal innocence.  *Bousley v. United States*, 523 U.S. 614, 623 (1998).

### III.    Analysis

As previously set forth, Petitioner's amended petition in this action asserts the following ground for relief: "The State's examination and admission of Petitioner's letters to counsel violated Petitioner's Sixth Amendment right to counsel."  (ECF No. 30 at 1.)  In his response to Respondent's motion for summary judgment, Petitioner explains that he is not raising a prosecutorial misconduct claim, a due process claim, or a state evidentiary claim, and that he presents only a Sixth Amendment right-to-counsel claim.  (ECF No. 35 at 1.)

After reviewing the record and the parties' briefs, the Magistrate Judge determined that Petitioner's sole ground for relief is procedurally defaulted, explaining:

> Jackson did not argue either before the trial court or in his direct appeal that his Sixth Amendment right to counsel was violated by the seizure of documents from his jail cell. As such, this ground is procedurally defaulted in federal habeas.
>
> At both the trial level and on direct appeal, Jackson's arguments centered on the attorney-client privilege, which is not a privilege that stems directly from constitutional law. Indeed, as recognized by the parties, the attorney-client privilege is one of state law. Moreover, the privilege is applicable to attorney-client relationships well beyond those that arise out of and are protected by the Sixth Amendment to the United States Constitution. [ ] Jackson did not reference the Sixth Amendment in his arguments to the trial judge. [ ] And while he cited the Sixth Amendment in his direct appeal brief, it appears that was only a reference to the law under which he was entitled to counsel. Jackson never argued that his right to counsel under that amendment had been violated, nor did he cite any case law to that effect. [ ] The case law he cited concerned the state law attorney-client privilege and its applicability. [ ] Furthermore, while Jackson specifically referenced a "rule" that "[i]nmates at a detention center have the right to correspond with their attorneys with the expectation that their correspondence will be free from seizure by law enforcement[,]" he never indicated such protections stemmed from the Sixth Amendment. Indeed, the gist of his argument was that attorney-client correspondence was protected by the attorney-client privilege.
>
> The undersigned does not view the arguments made in state court as a proper presentation of a Sixth Amendment claim. . . . Jackson's direct appeal arguments did not even hint that a Sixth Amendment claim was lurking. His arguments focused primarily on the state law privilege argument, and the citation to the Sixth Amendment appeared to be merely a foundational citation. There is no reason to believe the South Carolina Court of Appeals would have gleaned any intent by Jackson to raise a Sixth Amendment claim based on his direct appeal brief. As such, he did not fairly present a Sixth Amendment claim in state court.

(ECF No. 37 at 14-15 (internal citations omitted).)

In his objections to the Magistrate Judge's Report, Petitioner asserts that the Magistrate Judge's Report "purports to be based on procedural default," but "the reasoning sounds in exhaustion." (ECF No. 38 at 1-2.) Petitioner contends that the Magistrate Judge's conflation of the two distinct legal concepts does not produce a just result, and he argues that he sufficiently exhausted his claim in state court by (1) specifically referencing

9

the Sixth Amendment on page nine of his appellate brief and (2) including "the factual allegations that the writings were seized from Petitioner's cell, reviewed by law enforcement, and introduced at trial." (*Id.* at 3.) Petitioner further asserts that the state agrees with him that he sufficiently exhausted his claim. (*Id.*)

As to the issue of procedural default, Petitioner argues that "[p]rocedural default is available only when invoked by the state court itself," and that this Court may not invoke procedural default because the state court did not invoke the state court rules. (*Id.*)

Lastly, Petitioner requests that the Court issue a certificate of appealability if it agrees with the Magistrate Judge and denies his claim on procedural grounds. (*Id.* at 4.)

After a de novo review of the record, the Court finds no merit to Petitioner's objections. The Magistrate Judge clearly determined that, although Petitioner may have exhausted his *state court remedies* as to certain claims by filing a direct appeal and a PCR application, he did not exhaust his state court remedies *with respect to the specific Sixth Amendment claim* he now raises in his amended habeas corpus petition.[2] In other words, contrary to Petitioner's argument that he sufficiently exhausted his instant claim by generally referencing the Sixth Amendment in his appellate brief and by including certain factual allegations, the Court completely agrees with the Magistrate Judge that Petitioner failed to present his Sixth Amendment claim to the state court "face-up and squarely." As the Magistrate Judge properly explained, "Jackson's direct appeal arguments did not even hint that a Sixth Amendment claim was lurking." (ECF No. 37 at 15.) Instead, his legal

---

[2] Petitioner asserts in his objections that Respondent agrees with him that he sufficiently exhausted his claim, but a review of Respondent's briefs refutes Petitioner's assertion. Respondent admitted that Petitioner was tried, appealed, and filed a PCR application in an effort to exhaust his state court remedies, but Respondent did not admit that Petitioner sufficiently exhausted the specific claim he now raises.

arguments and factual assertions before the state court focused entirely on his claims that the jail writings seized from his cell were protected by the attorney-client privilege and that seizure of the documents violated his right to due process. *See Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000) (quoting *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997) ("Fair presentation mandates that the claim 'be presented face-up and squarely. . . . Oblique references which hint that a theory may be lurking in the woodwork will not suffice.'"); *Breard*, 134 F.3d at 619 ("The exhaustion requirement is not satisfied if the petitioner presents new legal theories or factual claims for the first time in his federal habeas petition."). In short, Petitioner simply did not raise a claim before the state court that his Sixth Amendment right to counsel was violated by the seizure of the documents from his jail cell or by their use at trial. After a thorough review of the state court record, therefore, the Court agrees with the Magistrate Judge that Petitioner did not fairly present his instant Sixth Amendment claim to the state court or give the state court a fair opportunity to review the claim.

Furthermore, the Court agrees with the Magistrate Judge that Petitioner's claim would be procedurally defaulted if he attempted to raise it in state court at this time. *See Breard*, 134 F.3d at 619 (quoting *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)) (explaining that a procedural default occurs when "'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'"); *see also Stewart v. Warden of Lieber Corr. Inst.*, 701 F. Supp. 2d 785, 790 (D.S.C. 2010) ("When a federal habeas petitioner has failed to raise a claim at the appropriate time in state court and has no further means of bringing that issue before the state courts, the claim will be considered procedurally defaulted, and he

11

will be procedurally defaulted from raising the issue in his federal habeas petition."). Because Petitioner failed to preserve his claim at the trial level and failed to raise it in his direct appeal (or his PCR application), and because it is clear that the state court would apply its own procedural bar if Petitioner were to attempt to raise his claim before the state court now, this Court cannot review Petitioner's claim unless Petitioner can demonstrate cause for the default and actual prejudice therefrom, or his actual innocence. After review, it is abundantly clear to the Court that Petitioner cannot demonstrate either cause and prejudice or actual innocence; thus, the Court finds no error in the Magistrate Judge's determination that Petitioner's claim is procedurally defaulted.

Finally, with respect to Petitioner's objection seeking the issuance of a certificate of appealability, the governing law provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating that reasonable jurists would find the Court's assessment of his constitutional claims debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. See Miller–El v. Cockrell, 537 U.S. 322, 336 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000); Rose v. Lee, 252 F.3d 676, 683 (4th Cir. 2001). After review, the Court finds that the legal standard for the issuance of a certificate of appealability has not been met. Therefore, the Court adopts the Magistrate Judge's recommendation and denies a certificate of appealability.

## CONCLUSION

Based on the foregoing, the Court adopts the Magistrate Judge's Report (ECF No. 37); overrules Petitioner's objections (ECF No. 38); grants Respondent's motion for

summary judgment (ECF No. 32); denies Petitioner's cross-motion for summary judgment (ECF No. 35); and denies a certificate of appealability.

    **IT IS SO ORDERED.**

/s/Bruce H. Hendricks
United States District Judge

August 29, 2022
Charleston, South Carolina